THE PEOPLE *ex rel.* ROBERT NELSON *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF LONG GROVE, Defendant-Appellee.

Second District   No. 2—87—0859

Opinion filed May 6, 1988.—Rehearing denied June 14, 1988.

Fred L. Foreman, State's Attorney, of Waukegan, for the People.

C. Jeffrey Thut, of Ray & Glick, Ltd., of Libertyville, for other appellants.

John M. Mullen, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Robert Nelson *et al.*, appeal from the trial court's denial of their amended petition for leave to file a complaint in *quo warranto* against defendant, Village of Long Grove, in order to challenge the validity of a territorial annexation by Long Grove. On appeal, plaintiffs contend that the trial court abused its discretion by denying them leave to file their complaint in *quo warranto* or to further amend their petition for leave to file the complaint. We reverse and remand.

On August 14, 1986, certain landowners in unincorporated Lake County filed a petition in the circuit court to annex territory to Long Grove. The territory included land plaintiffs owned. The trial court set a hearing date of September 3 for the petition and any objections. A notice was published in the Chicago Tribune on August 18 concerning the petition and the hearing. On September 3, the trial court ruled that the annexation petition was sufficient and ordered the corporate authorities of Long Grove to vote on the proposed annexation. The next day, the village trustees of Long Grove approved an ordinance annexing the territory.

Plaintiffs filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) to vacate the judgment on December 31, 1986. Plaintiffs alleged in the petition that they never received notice of the proposed annexation and did not learn until December 2, 1986, that their property had been annexed. The trial court denied the petition on April 23, 1987, on the basis that a completed annexation can only be challenged by means of

a complaint in *quo warranto*. Plaintiffs' motion to reconsider was denied on June 1. This court recently affirmed the denial of the section 2—1401 motion. *In re Petition of Certain Citizens to Annex Certain Territory to the Village of Long Grove* (No. 2—87—0629, 2d Dist. 1988) (unpublished Rule 23 order).

Plaintiffs filed their original petition for leave to file a complaint in *quo warranto* on May 22, 1987. They filed an amended petition on August 3 which included a copy of their proposed complaint. Plaintiffs alleged in the amended petition and proposed complaint that the purported September 1986 annexation of their land was illegal and invalid because of fraud and noncompliance with the notice provisions of section 7—1—2 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2). Plaintiffs further alleged that they informed Long Grove officials prior to the inception of the annexation proceedings that they did not wish to have their land annexed to the village. The petitioners in the annexation proceedings and certain Long Grove officials told plaintiffs that their land would not be annexed without their consent. When the annexation petitions were circulated in the region to be annexed, plaintiffs were deliberately bypassed so they would not receive notice of the proposed annexation. Notice of the September 3, 1986, hearing on the annexation petition was published in the Chicago Tribune, rather than a newspaper published in Long Grove as required by section 7—1—2 of the Code, in a deliberate attempt to conceal the proposed annexation from plaintiffs.

The amended petition and proposed complaint allege additionally that Long Grove has exercised jurisdiction over plaintiffs' land since September 3, 1986, and that, if the annexation proceedings had not been fraudulently concealed, plaintiffs could have raised a valid objection to the annexation of their land, since their land is on the perimeter of the annexed territory. (See Ill. Rev. Stat. 1985, ch. 24, par. 7—1—3(4).) The amended petition states that the value of plaintiffs' land as commercial property has diminished greatly as a result of the annexation and that Long Grove has no ordinance which would permit plaintiffs to use their land in the same manner as they had prior to the annexation, with the exception of an ordinance concerning nonconforming uses. The amended petition also states that on or about April 8, 1987, petitioners sent written requests to the Illinois Attorney General and the Lake County State's Attorney to bring a *quo warranto* action against Long Grove, but they refused to do so.

Long Grove filed pleadings objecting to both the original petition for leave to file a complaint in *quo warranto* and the amended petition. Attached to one of those pleadings was the affidavit of Robert

Cimo, owner of one of the parcels of land that was annexed by Long Grove in September 1986. Cimo stated in his affidavit that he entered into an agreement to purchase this parcel on July 2, 1986, for $340,000. He agreed to pay this sum because the property was located in an unincorporated area of Lake County which was zoned highway commercial. If the property had been zoned residential, it would have been worth no more than $40,000. Cimo intended to develop the property for commercial use with Goodyear Tire and Rubber Company as the primary tenant. He discovered early in November 1986, however, that the property had been annexed by Long Grove and was now zoned residential. Cimo filed a declaratory judgment action against Long Grove in the circuit court of Lake County. On December 18, 1986, the circuit court entered an agreed judgment order incorporating the terms of a settlement agreement between Cimo and Long Grove. Under the terms of this agreement Cimo was permitted to develop the property for use as an automotive service and shopping center with Goodyear Tire and Rubber Company as the primary tenant. Cimo agreed to construct this facility in substantial compliance with a site plan to which the parties agreed. Cimo also agreed to certain limitations with respect to operating hours, signs, and lighting fixtures and to abide by certain other restrictions.

Cimo stated in the affidavit, which he executed on July 14, 1987, that he was personally liable for an amount in excess of $550,000 for a construction loan and other obligations that he would have to pay if he was unable to develop the land quickly. Cimo stated that he closed on the property on January 20, 1987, in reliance on the Long Grove annexation and the agreed circuit court order of December 18, 1986. According to Cimo's affidavit, there was more than a reasonable probability that the filing of a *quo warranto* complaint would cause Countryside Bank of Mount Prospect to refuse to make any further disbursements on his construction loan until the termination of the litigation. Cimo would then be unable to complete the project and could be forced into bankruptcy. Cimo also stated that if the annexation was declared void and the property again became part of unincorporated Lake County, he would be required to make substantial expenditures in order to comply with county zoning requirements. These expenditures were set forth in detail in the affidavit.

One of Long Grove's pleadings also contained the affidavit of the village administrator, Dwayne Doughty. Doughty stated that Long Grove expected to receive at least $19,000 per year in sales tax revenue from the Cimo property. Doughty also stated that from August 18, 1986, through and including July 17, 1987, no newspaper of gen-

eral circulation was published in Long Grove.

Long Grove asserted in the trial court that leave to file a complaint in *quo warranto* should be denied because the public interest would not be served through the filing of a complaint, there were no defects in the annexation proceedings, plaintiffs failed to set forth specific facts demonstrating a private interest which was harmed by the annexation, and failed to set forth facts showing the necessity of the relief sought. Long Grove also argued that plaintiffs should be barred from filing a complaint in *quo warranto* under the doctrines of *laches* and estoppel. On September 1, 1987, the trial court denied plaintiff's amended petition for leave to file a complaint in *quo warranto* and refused to grant plaintiffs leave to further amend the petition. The instant appeal ensued.

■ The question of whether leave should be granted to file a complaint in *quo warranto* is a matter which lies within the sound discretion of the trial court, which may consider all surrounding circumstances and conditions, the motives of the petitioner in having the proceeding instituted, and whether the public interest will be served by permitting the action. (*People ex rel. Koplin v. Village of Hinsdale* (1976), 38 Ill. App. 3d 714, 718.) The petition for leave to file the complaint must be full, positive, and convincing and show the interest of the petitioner; it must recite facts sufficient to satisfy the court that there are competent grounds for proceeding. (*People ex rel. Vanderhyden v. Village of Elwood* (1972), 5 Ill. App. 3d 590, 592.) The complaint itself need not expressly set forth the grounds for an attack on defendant's claimed right. Ill. Rev. Stat. 1985, ch. 110, par. 18—102; *Koplin*, 38 Ill. App. 3d at 718.

■ Long Grove asserts that plaintiffs failed to allege sufficient facts in their amended petition for leave to file their complaint to demonstrate the existence of a personal interest which was harmed by the annexation. An individual only has standing to initiate a *quo warranto* proceeding if he or she has an interest which is directly, substantially, and adversely affected by the action sought to be challenged in the proceeding. (*People ex rel. Durst v. Village of Germantown Hills* (1977), 51 Ill. App. 3d 969, 971.) The interest must be a personal interest not shared in common with the general public (*People ex rel. Hettlemen v. Board of County Commissioners* (1968), 102 Ill. App. 2d 310, 317), although it may be shared with other members of the community. *Durst*, 51 Ill. App. 3d at 970-71.

■ Plaintiffs allege in their amended petition that the value of their land as commercial property has diminished greatly as a result of the annexation. No facts are presented in the amended petition to

support this allegation. Although plaintiffs do state in their amended petition that Long Grove has no ordinance permitting them to use their property in the same manner as they had prior to the annexation, with the exception of an ordinance regarding nonconforming uses, they do not allege how their use of the property has been restricted as a result of the annexation and how this has caused a decrease in the value of the land. Such conclusory allegations of harm are not sufficient. (*Durst*, 51 Ill. App. 3d at 971.) While plaintiffs correctly point out that the affidavit of Robert Cimo states that the zoning on his property shifted from highway commercial to residential and that the property was worth about $300,000 less zoned residential, they did not allege any specific facts establishing that similar zoning restrictions were placed upon their land.

Long Grove's contention must be rejected, however, because plaintiffs also alleged in their amended petition that the land they own is on the perimeter of the territory annexed, providing them with a valid objection which could have been successfully raised if plaintiffs had received notice of the annexation proceedings. Section 7—1—3(4) of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—3(4)) states that one of the objections that may be raised to an annexation petition is "that the objector's land is located on the perimeter of such territory, that he does not desire annexation, and that exclusion of his land will not destroy the contiguity of such described property with the annexing municipality." Additionally, section 7—1—4 of the Code states in relevant part as follows:

> "Prior to hearing evidence on the validity of the annexation petition or ordinance, the court shall hear and determine any objection under sub-paragraph (4) of Section 7—1—3. If the court is satisfied that such objection is valid, it shall order the petition or ordinance to be amended to eliminate such objector's land from the territory sought to be annexed." (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—4.)

According to the facts alleged in plaintiffs' amended petition, they had an absolute statutory right to object to the annexation proceedings and to have the annexation petition amended to eliminate their land from the territory sought to be annexed. The right to raise this objection to the Long Grove annexation was held only by perimeter landowners, not by the general public, or even by all of the landowners whose property was annexed by Long Grove on September 4, 1986. Plaintiffs' statutory right to exempt their land from the instant annexation proceedings was therefore a private interest which was adequately set forth in their amended petition.

Plaintiffs' amended petition also sets forth sufficient facts to demonstrate that this interest was directly, substantially, and adversely affected by the action which they sought to challenge. Under section 7—1—3 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—3), objections to an annexation petition must be filed no later than five days prior to the date set by the circuit court for the hearing on the petition. According to the allegations of the amended petition, Long Grove engaged in fraudulent conduct designed to prevent plaintiffs from discovering the annexation proceedings until it was too late to file timely objections. The amended petition states that village officials told plaintiffs that their land would not be annexed to Long Grove without their consent. When annexation petitions were circulated among landowners in the territory to be annexed, plaintiffs were deliberately bypassed. Notice of the hearing on the amended petition was published for only one day in the Chicago Tribune, rather than a newspaper published in Long Grove as required by section 7—1—2 of the Code. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.) The amended petition alleges sufficient facts to demonstrate the requisite harm to plaintiffs' interest since it alleges that Long Grove's fraudulent conduct prevented them from raising a timely objection in the annexation proceedings and from exercising their statutory right to exempt their perimeter property from the annexed territory.

■■■ Long Grove further asserts that leave to file a complaint in *quo warranto* was properly denied because plaintiffs failed to allege any facts which would indicate that Long Grove failed to comply with the applicable statutory requisites for annexation proceedings. (See Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.) When an annexation is accomplished in such a manner as to deprive potential objectors of notice of the annexation proceeding, it will be considered void on the basis of fraud and abuse of the court's process. (*In re Petition of Village of Kildeer to Annex Certain Property* (1987), 162 Ill. App. 3d 262, 270, *appeal allowed* (1988), 118 Ill. 2d 544; *In re Annexation of Territory to Village of Palatine* (1967), 84 Ill. App. 2d 6, 14; *In re Petition to Annex Certain Territory to Village of Willowbrook* (1962), 37 Ill. App. 2d 393, 401-02.) This is true even if the municipality complies with the letter of the statute with respect to notice of the annexation petition. (*Willowbrook*, 37 Ill. App. 2d at 401-02.) As in *Willowbrook*, the facts alleged by plaintiffs suggest a deliberate effort on the part of Long Grove to provide statutory notice "in such a manner that the possibility of objectors reading the notice would be very remote" (37 Ill. App. 2d at 401-02). These facts also indicate that Long Grove officials engaged in other conduct designed to minimize the possibility po-

tential objectors would receive notice of the annexation proceedings. If Long Grove has engaged in such conduct, the annexation is void even if the village did comply with the letter of section 7—1—2.

Plaintiffs do, however, allege that the notice was defective under section 7—1—2 because it was published in the Chicago Tribune rather than a newspaper published in Long Grove. Long Grove correctly contends that, if no newspaper is published in the annexing municipality, the notice may be published in any newspaper with a general circulation in the annexing municipality and the territory to be annexed. Long Grove further notes that the affidavit of village administrator, Dwayne Doughy, states that no newspaper of general circulation was published in Long Grove between August 18, 1986, the day the notice was published and July 17, 1987, the day the affidavit was executed, and argues that the affidavit was uncontroverted with regard to this issue. In making this argument, Long Grove ignores the fact that an exhibit attached to its objection to the original petition for leave to file a complaint in *quo warranto* directly contradicts the Doughty affidavit on this issue. The exhibit in question is a copy of the trial court's judgment order in Raymond Cimo's lawsuit against Long Grove. The order states that notice of a meeting of the Long Grove Board of Trustees held on December 16, 1986, to consider a proposed judgment order settling the Cimo lawsuit is attached as an exhibit. The order states that the notice was published in the Vernon Town Crier on November 27, 1986. The attached copy of the certificate of publication for the notice states that the Vernon Town Crier is a newspaper of general circulation in the Village of Long Grove and is published in the Village of Long Grove. The certificate of publication indicates that there was a newspaper published in Long Grove with a general circulation in Long Grove during the same period in which the Doughty affidavit states that there was no such newspaper. Long Grove failed to negate plaintiffs' allegation that the notice of the annexation petition and hearing thereon was defective under section 7—1—2. Additionally, the fact that Long Grove represented to one trial judge that no newspaper was published in the village between August 18, 1986, and July 17, 1987, and represented to another trial judge that there was a newspaper published in the village on November 27, 1986, tends to substantiate plaintiffs' allegations of fraudulent conduct and abuse of the court's process on the part of Long Grove.

■ Long Grove contends that the doctrines of *laches* and estoppel barred plaintiffs from filing a complaint in *quo warranto*. *Laches* is an equitable doctrine which bars an action where, because of delay in bringing suit, a party has been misled or prejudiced, or has taken a

course of action different from that which he might have taken. (*Hippert v. O'Grady* (1981), 97 Ill. App. 3d 310, 312.) A party may not rely upon the doctrine of *laches* unless there has been an unreasonable delay which has resulted in prejudice. (*Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 941.) Long Grove asserts that it was unreasonable for plaintiffs to wait until May 22, 1987, to seek leave to file a complaint in *quo warranto* and that prejudice resulted to both the village and Raymond Cimo. Long Grove ignores the fact that plaintiffs first challenged the annexation several months earlier through the section 2—1401 petition filed in the annexation case on December 31, 1986. There is no evidence that there was any unreasonable delay in bringing this petition after plaintiffs first learned of the annexation. After the trial court dismissed the section 2—1401 petition on April 23, 1987, on the basis that a complaint in *quo warranto* was the only proper method of challenging an accomplished annexation, plaintiffs sought leave to file such a complaint within 30 days, filing their petition on May 22. The petition was filed prior to the trial court's disposition of plaintiffs' motion to reconsider in the annexation case, which was denied on June 1. There was no showing made to the trial court that there was any unreasonable delay which caused Long Grove to believe that plaintiffs acquiesced in the annexation. The doctrine of *laches* is therefore inapplicable.

■ Likewise inapplicable are the doctrines of promissory estoppel and equitable estoppel. The doctrine of promissory estoppel may only be applied against a party who makes an unambiguous promise. (*Verdeyen v. Board of Education* (1986), 150 Ill. App. 3d 915, 929.) In the case at bar, plaintiffs made no promise to refrain from challenging the annexation of their land. Equitable estoppel arises when the voluntary conduct of a party precludes him from asserting his rights against another who in good faith relied upon that conduct and was led to change his position to his detriment. (*Searcy v. Chicago Transit Authority* (1986), 146 Ill. App. 3d 779, 783.) The doctrine may only be invoked if the words or conduct relied upon amount to a misrepresentation or concealment of a material fact. (*Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.* (1984), 130 Ill. App. 3d 798, 805, *aff'd* (1986), 114 Ill. 2d 133.) Here, there is no indication in the record that plaintiffs made any misrepresentations concerning their desire to challenge the annexation or attempted to conceal this desire in any manner including delay in bringing the challenge after they found out about the annexation. Plaintiffs are not barred under the doctrines of promissory or equitable estoppel from bringing a complaint in *quo*

*warranto* against Long Grove.

■ Long Grove asserts that the harm that could result to the village and Raymond Cimo from the filing of a *quo warranto* complaint justifies the denial of plaintiffs' amended petition for leave to file such a complaint. The only potential harm to the village itself cited by Long Grove is the loss of sales tax revenue, estimated at $19,000 annually, from the Cimo property. Long Grove's contention that the potential loss of this revenue is a proper basis for denial of leave to file a complaint in *quo warranto* is particularly unpersuasive. In effect, Long Grove is asserting that, even if the village is guilty of fraudulent conduct, plaintiffs were properly denied leave to file their complaint because the village could lose the benefits of the fraudulent conduct as a result. The flaws in Long Grove's reasoning are readily apparent.

With regard to Cimo, the statements in his affidavit to the effect that the mere filing of a complaint in *quo warranto* would very likely cause his bank to cease making disbursements on his construction loan, resulting in the failure of his project and possibly in personal bankruptcy, are mere conclusions unsupported by any facts in the affidavit. Since Cimo could not have competently testified as to what the bank may or may not have done as a result of the filing of a complaint in *quo warranto*, these statements could not have been considered by the trial court. (*Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 1056.) Cimo does state with specificity in his affidavit the expenses he would be forced to incur if his property once again became a part of unincorporated Lake County. It is not clear from the record whether the Cimo property is contiguous to Long Grove and could be reannexed if the entire annexation were declared invalid. Even if the property is not contiguous, reannexation remains a possibility if Cimo's neighboring landowners are agreeable. In any event, if prejudice to Cimo cannot be avoided in any other manner, the trial court has the discretion to declare the annexation void only as to the objecting landowners, as it did in *Willowbrook* (37 Ill. App. 2d at 402). The potential harm to Cimo did not necessitate denial of plaintiffs' amended petition.

■ Long Grove's assertion that plaintiffs did not set forth sufficient facts in their amended petition to demonstrate the necessity of the remedy sought is without merit. Plaintiffs' statutory right as perimeter landowners to exempt their land from the annexation can only be preserved if the annexation is declared void, at least with regard to the land plaintiffs owned.

■ As we have previously noted, the trial court may consider the public interest in determining whether to grant or deny leave to

file a complaint in *quo warranto*. (*People ex rel. Koplin v. Village of Hinsdale* (1976), 38 Ill. App. 3d 714, 718.) In the case at bar, the public interest would be better served by permitting the filing of a *quo warranto* action. We believe there is a compelling public interest at stake in deterring municipalities from engaging in tactics designed to prevent property owners whose land is the subject of annexation proceedings from receiving notice of those proceedings in time to exercise their right to raise valid statutory objections. While Long Grove has not been proved guilty of engaging in such tactics, plaintiffs should have an opportunity to file and prosecute their complaint against the village. Accordingly, we reverse the order of the circuit court of Lake County dismissing plaintiffs' amended petition for leave to file a complaint in *quo warranto* with prejudice and remand the cause with directions to grant plaintiffs leave to file their complaint in *quo warranto*.

Reversed and remanded with directions.

LINDBERG, P.J., and REINHARD, J., concur.