RAY DANCER, INC., Plaintiff-Appellant, v. THE DMC CORPORATION, Defendant (Leisure Arts, Inc., Defendant-Appellee).

Second District   No. 2—87—1200

Opinion filed November 3, 1988.

Smith & Munson, Ltd., of Wheaton, and Randall J. Yorke and Stanley A. Walton III, both of Winston & Strawn, of Chicago, for appellant.

Alan H. Silberman, of Sonnenschein, Carlin, Nath & Rosenthal, and David M. Schiffman, of Sidley & Austin, both of Chicago, and Helene D. Jaffe, of Weil, Gotshal, Manges, of New York, New York, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Ray Dancer, Inc., appeals from an order of the circuit court of Du Page County which dismissed counts X, XI, and XII of its second amended complaint against defendant, Leisure Arts, Inc. (Leisure). Count X of plaintiff's second amended complaint was dismissed on the basis of the statute of frauds provision of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—201) (statute of frauds). (See Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(7).) The trial court dismissed counts XI and XII after finding that those counts failed to state a cause of action under Illinois law. Defendant DMC Corporation is not a party to this appeal, and litigation continues as to that defendant.

Plaintiff raises four issues on appeal: (1) whether Leisure made a judicial admission in its pleadings; (2) whether either the letter to the German manufacturer or the purchase order is a sufficient memorandum to satisfy the statute of frauds; (3) whether Leisure waived its statute of frauds defense; and (4) whether the circuit court improperly dismissed the misrepresentation claims.

In 1984, plaintiff, Ray Dancer, Inc. (Dancer), entered the embroidery floss importing business. It aspired to compete with industry gi-

ant DMC Corporation (DMC), the largest manufacturer of floss in the United States. Leisure Arts, Inc., distributes knitting and needlepoint products. Embroidery floss is one of the products that Leisure distributes. Leisure had been one of DMC's largest United States distributors of floss.

In July 1985, Dancer offered its Madeira floss to Leisure for distribution. Madeira floss is a high grade embroidery floss on par with DMC's floss. Dancer imported the Madeira floss from West Germany. On July 31, 1985, Dancer and Leisure entered into a consignment sales agreement. Dancer drafted this contract. The relevant portions stated:

"1.2 Amount and Delivery: On or before September 1, 1985, Consignor shall deliver to the Consignee 50,000 boxes of the Goods *** F.O.B. at Consignee's warehouse in North Little Rock, Arkansas.

\* \* \*

3.1 Replenishment of Inventory: Upon receipt of payment for Goods sold by Consignee, Consignor shall deliver to Consignee sufficient boxes of Goods to increase Consignee's inventory to 50,000 boxes.

\* \* \*

6.2 Entire Agreement: This Agreement includes all amendments and supplements thereto, and all assignments, instruments, documents, accounts and other writings submitted by Consignee to Consignor pursuant to this Agreement. All other agreements, whether verbal or written, are merged herein. *This Agreement may not be modified except by writing, executed by the party or parties sought to be bound.*" (Emphasis added.)

The parties agreed that "Leisure would carry floss from Dancer-Madiera [*sic*] as a second brand," Leisure's private label floss.

When DMC learned that one of its major distributors intended to carry a competing brand of floss, it requested that Leisure not pursue the deal. When Leisure refused to be dissuaded, DMC threatened to terminate sales of DMC floss to Leisure. Leisure made the executive decision to carry the Dancer line, in spite of the threats. It did, however, take such threats seriously, since DMC was the industry standard, and the only manufacturer of high grade floss besides Dancer.

Dancer alleged that because of concern over the threatened cutoff, Leisure modified its agreement with Dancer. Allegedly, they entered into a requirement contract to insure Leisure's supply of high grade floss, if DMC did cut off its relations with Leisure.

On September 13, 1985, DMC terminated its distribution arrangement with Leisure, leaving Dancer as Leisure's only supplier of high grade floss. Dancer alleged that, at this point, Leisure increased its orders from Dancer. Dancer also alleged that, at Leisure's request, Dancer terminated its agreements with its other distributors and sold exclusively to Leisure.

Subsequently, Leisure sued DMC for alleged antitrust violations. DMC responded by filing suit in New York against Leisure, alleging trademark infringement. DMC alleged that Dancer's floss violated its trademarks and consequently sought to enjoin Leisure from distributing this product.

Since Dancer's floss was at issue in the New York litigation, Dancer was understandably concerned about the course of the suit. Dancer claimed it wanted to be involved in the suit because its only product was the subject of a trademark infringement action, and its only customer was being pressured to drop the Dancer product. Dancer further claimed that it relied on Leisure "for guidance" concerning the litigation and that Leisure had made misrepresentations concerning the course of the litigation. Leisure allegedly told Dancer that the suit had been "fully tried in New York and Leisure had lost." What had occurred was that the court issued a temporary restraining order prohibiting Leisure from carrying Dancer's products. Leisure and DMC then settled the case. Leisure agreed to drop the suit it filed against DMC and agreed to terminate sales of Dancer's products, in return for being restored as a DMC distributor.

Consequently, Dancer filed suit in the circuit court of Du Page County alleging breach of contract and misrepresentation against Leisure and antitrust violations against DMC.

In count X of its second amended complaint, plaintiff alleged that it had a valid and enforceable requirement contract with Leisure. Plaintiff contended that Leisure had an absolute obligation to buy floss from Dancer and that defendant violated this agreement.

Count XI alleged that Leisure knowingly misrepresented the state of the litigation between Leisure and DMC and that Leisure had a duty truthfully to keep Dancer apprised of the situation. The allegedly false statements of fact were that: the suit was fully tried and Leisure had lost; the court said that no "DMC" reference could appear on any competitive floss label; Leisure had done all it could in regards to the litigation; the only reason Leisure would not appeal the ruling was the prohibitive cost of such an appeal; the judge ruled that Leisure could not buy floss from Dancer; the judge wanted a fast trial; Dancer's interests had been fully represented in the suit; and it would not do

Dancer any good to hire an attorney. Dancer alleged that Leisure intended that plaintiff would rely on these misrepresentations and that such reliance was reasonable. The harm resulting from this reliance was claimed to be that Dancer did not intervene in the DMC-Leisure suit. Count XII is identical to count XI, except that count XII alleges that the complained-of acts were done with malice.

Leisure moved to dismiss counts X through XII of plaintiff's second amended complaint, on the grounds that the consignment contract was never orally modified and, further, that such modification is unenforceable under the statute of frauds (Ill. Rev. Stat. 1981, ch. 26, par. 2—201). Counts XI and XII were argued to be dependent on count X, so that if count X was dismissed, counts XI and XII should also be dismissed.

The court granted defendant's motion as to count X because the letter that plaintiff relied on to serve as a memorandum of agreement to satisfy the statute of frauds did not reference any modification of the contract and it predated the alleged modification. Also, the court believed that since the agreement required any modification to be in writing, the interpretation of the clause could be decided as a matter of law in that motion.

The court dismissed counts XI and XII because the court failed to see how those counts stated a theory of recovery under Illinois law. The court felt that plaintiff did not have a right of intervention in the DMC-Leisure suit, and that even if Dancer did have such a right, "[t]hey are carrying on the same litigation here [in Illinois] which they [would] have been entitled to in the prior New York suit." The plaintiff's alleged harm resulted from the settlement, and the court believed that plaintiff could not have prevented the settlement, and, therefore, plaintiff sustained no damage that could be remedied in the current suit.

In response to the dismissal, plaintiff filed a motion for reconsideration, emphasizing that the "court failed to give due consideration to [Dancer's] argument of a judicial admission by Leisure and had the court done so, [the] court would [have been] mandated to deny Leisure's motions." The court dismissed this argument because the court did not think it was valid.

■ Plaintiff's first contention on appeal is that Leisure made a judicial admission that the parties had a requirement contract. Section 2—201(3)(b) of the Uniform Commercial Code allows enforcement of an oral contract where the defendant admits "in his pleading, testimony or otherwise in court" that a contract was made. (Ill. Rev. Stat. 1987, ch. 26, par. 2—201(3)(b).) However, plaintiff failed to cite any

authority for this proposition in its brief, and under Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), the appellate brief must contain citations to the relevant authority supporting each issue on appeal or the issue is waived. (*In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89.) Even if this issue were not waived, plaintiff's contention still fails. While admissions made in the party's pleading bind that party throughout the course of the litigation, unless the admissions were the result of mistake, the pleader only admits what is specifically alleged. *Colgan v. Premier Electrical Construction Co.* (1981), 92 Ill. App. 3d 407, 411.

The complaint specifically alleged:

> "25. About Mid-September, 1985, an undaunted Leisure decided, at the Board of Directors level, to proceed with Dancer, and advertise and exclusively distribute Madiera [*sic*] floss from Dancer, Inc., temporarily under the Madiera [*sic*] trade name bands while Leisure designed their own bands and boxes for 1986 introduction."

Leisure answered:

> "Leisure admits that in mid-September, 1985, it decided to proceed with the advertising and exclusive distribution of the Madeira floss from Dancer \*\*\*. Leisure admits that the decision was made with the knowledge of Leisure's Board of Directors \*\*\*. All remaining allegations of Paragraph 25 not expressly admitted herein are denied."

Clearly, all that Leisure admitted was that it decided to *exclusively distribute* Dancer's floss, *not exclusively purchase* Dancer's floss. Plaintiff urges us to make a logical leap from concluding that when defendant admitted the existence of an exclusive sales contract, it necessarily admitted an exclusive purchase contract. This contention is plainly invalid and is therefore rejected.

Next, we examine plaintiff's contention that the oral modification is enforceable under section 2—201(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—201(2)), which provides that an oral contract between merchants for the sale of goods over $500 is enforceable "if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received [,]\*\*\* unless written notice of objection to its contents is given within 10 days after it is received." Ill. Rev. Stat. 1987, ch. 26, par. 2—201(2).

■■ The writing that plaintiff believes satisfies the requirements of section 2—201(2) is a letter that Dancer sent to its German supplier. However, this letter is insufficient as a confirmation of the modification of the consignment agreement for two reasons. First, the let-

ter merely describes the consignment agreement between Dancer and Leisure. It says nothing about any modification or change agreed to by the parties. Second, and more significantly, the letter predates the alleged modification. The letter is dated August 20, 1985, but it was not until August 22, 1985, that DMC began to threaten Leisure with termination of the distributorship if Leisure continued to carry Dancer's floss. "[A] Section 2—201(2) writing must *** 'indicate[ ] that the parties have already made a deal or reached an agreement' [citation]." *Triangle Marketing, Inc. v. Action Industries, Inc.* (N.D. Ill. 1986), 630 F. Supp. 1578, 1580; see also *Bartsch v. Gordon N. Plumb, Inc.* (1985), 138 Ill. App. 3d 188, 195.

■ In addition, plaintiff contends that purchase orders sent to Dancer from Leisure satisfy the writing in confirmation of agreement exception of section 2—201(2). The plaintiff submitted to the trial court only one of the purchase orders. It reads:

"TELEX TO: MR. RAY DANCER

FROM: MR. JOE BUHAULA
      LEISURE ARTS, INC.

SUBJECT: PURCHASE ORDER NO. 2375

GOOD MORNING, RAY,
THIS TELEX IS TO FORMALLY ENTER THE SUBJECT ORDER FOR ANOTHER LOT OF LEISURE ARTS FLOSS BY MADEIRA. IN ORDER TO SAVE TIME TODAY, LET ME SIMPLY SAY: 'REPLICATE OUR ORIGINAL ORDER', INSTEAD OF LISTING THE ITEMS AND THEIR QUANTITIES.

MONDAY, THE 30TH I'LL SEND YOU A TELEX LISTING EXACTLY WHAT WE WILL NEED IN THE LONG TERM.

REGARDS,
JOE BUHAULA
PURCHASING MANAGER
LEISURE ARTS, INC."

This purchase order fails for several reasons to satisfy the writing requirement necessary to defeat a statute of frauds defense. Plaintiff is trying to prove that the parties orally agreed to modify their consignment agreement. This purchase order says nothing about a modification of the original agreement. On the contrary, it indicates that the parties were continuing their original agreement. However, plaintiff argues that the increase in frequency of the orders indicates an in-

crease in purchases, which it claims reflects the modification to a requirement contract. Yet plaintiff has not offered enough evidence to establish any increase in orders. A series of purchase orders would be required to establish the frequency of orders. By contrast, here plaintiff has presented only one purchase order.

Even if plaintiff's arguments were valid, the purchase order still fails as a memorandum of the oral modification because it is missing the quantity term. The quantity term is the essential element of the writing because "the contract is not enforceable *** beyond the quantity of goods shown in such writing." (Ill. Rev. Stat. 1987, ch. 26, par. 2—201(1).) In a contract for the sale of goods, the court can supply all missing terms except the quantity term. "While the quantity term in requirement contracts need not be numerically stated, there must be some writing which indicates that the quantity to be delivered under the contract is a party's requirements or output." (*Eastern Dental Corp. v. Isaac Masel Co.* (E.D. Pa. 1980), 502 F. Supp. 1354, 1364.) The fatal flaw of the purchase order is that it does not specify any quantity; it merely says "replicate our original order." Since the original order is not part of the record, "the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis." (*Fischer v. Mann* (1987), 161 Ill. App. 3d 424, 426.) Furthermore, had a quantity term been reflected in the purchase order, it would still be insufficient because orders of individual transactions "do not indicate that a requirements contract was entered into *** [because they] do not indicate that quantity is to be measured by requirements and, accordingly, do not satisfy the quantity term of the statute of frauds." (*Eastern Dental Corp.*, 502 F. Supp. at 1364.) Thus, the oral modification is not evidenced by any written memorandum.

■ Plaintiff next cites section 2—209(4) of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—209(4)) to suggest that Leisure had made a waiver of the contractual provision requiring modification of the consignment agreement to be in writing. Section 2—209(2) (Ill. Rev. Stat. 1987, ch. 26, par. 2—209(2)) states that a signed agreement that prohibits oral modification can only be modified by a signed writing. This subsection is qualified by subsection (4), which states:

> "Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver." Ill. Rev. Stat. 1987, ch. 26, par. 2—209(4).

Plaintiff argues that there was such a waiver under an equitable principle that does not allow a party to benefit from his wrongdoing

by hiding behind the statute of frauds. (*National Importing & Trading Co. v. E. A. Bear & Co.* (1927), 324 Ill. 346, 358.) Plaintiff reads this case as standing for the proposition that whenever a defendant secures a change in a written agreement and thereby benefits from it, that defendant is estopped from denying the oral modification and the statute of frauds defense will not apply.

However, plaintiff's interpretation of *National Importing* oversimplifies the rule of law set forth in that case. There, the court estopped the defendant from using the statute of frauds as a defense because of the defendant's acts. The defendant had agreed in writing to purchase several cases of goods from the plaintiff. Then, the defendant requested that the plaintiff reduce the amount of cases per shipment. After the oral modification, the price of the goods dropped dramatically. Thus, defendant used the modification as an excuse to avoid the contract by pleading the statute of frauds. 324 Ill. 346.

The case at bar is distinguishable from *National Importing* in one very crucial respect. The parties in *National Importing* agreed there was an oral modification of the contract. The issue before this court is whether the contract had been orally modified. There is no evidence to suggest that Leisure requested Dancer to modify the contract. It is possible that it was Dancer which wanted the alleged modification, since such a modification would be to Dancer's advantage. Dancer was attempting to break into the highly competitive embroidery floss market. Dancer had Leisure over the proverbial barrel, because Leisure needed to buy floss from Dancer while the suit between DMC and Leisure was pending. Dancer admits that Leisure was interested in carrying Dancer's floss as a second brand. Leisure wanted to carry both DMC and Dancer's floss. Had Leisure not wanted to carry DMC floss, it would not have sued DMC for antitrust violations. Thus, since *National Importing* is not relevant to the issues at bar, and because plaintiff has neither cited any other authority to support this contention nor explained how Leisure has otherwise waived the statute of frauds defense, we must conclude that there simply was no waiver.

■ We need not decide whether the misrepresentation counts were properly dismissed because that issue was not properly raised on appeal. First, plaintiff did not present any arguments in its first brief concerning the misrepresentation counts. "Supreme Court Rule 341(e)(7) provides that an argument not raised in the initial brief is considered waived for purposes of review and may not be raised for the first time in the reply brief." (*In re Estate of Fallscher* (1987), 159 Ill. App. 3d 302, 304-05; 113 Ill. 2d R. 341(e)(7).) Furthermore, plaintiff's reply brief did not cite any authority supporting its argu-

ments on the misrepresentation issue. "Supreme Court Rule 341(e)(7) [citation] provides that a litigant's brief must contain citations to the relevant authority supporting the argument·on appeal." (*In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89.) "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority." 130 Ill. App. 3d at 689.

Finally, neither plaintiff's brief nor the record states in which New York court the DMC-Leisure litigation was pending. "Affirmance is dictated if the record omits crucial facts." (*Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1042.) This information is crucial because the forum court determines by its own laws whether a right, such as the right of intervention, is procedural or substantive. *People v. Saiken* (1971), 49 Ill. 2d 504, 509, *cert. denied* (1972), 405 U.S. 1066, 31 L. Ed. 2d 796, 92 S. Ct. 1499.

Accordingly, the judgment of the Du Page County circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and REINHARD, J., concur.