THE CITY OF ROCHELLE, Plaintiff-Appellee, v. HAROLD SUSKI, Defendant-Appellant.

Second District   No. 2—89—0848

Opinion filed December 21, 1990.

INGLIS, J., dissenting.

John M. Nelson, of Clark, Nelson & Newton, of Rockford, for appellant.

Dennis R. Hewitt, of Rochelle, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Harold Suski, appeals from a judgment in favor of plaintiff, the City of Rochelle (City), in a forcible entry and detainer action. Defendant raises two issues on appeal: whether the trial court should have denied plaintiff relief on the basis of the equitable doctrines of *laches*, adverse possession, or abandonment; and whether the trial court erred in ruling that testimony about a pending offer to purchase defendant's property was inadmissible.

Plaintiff, the City of Rochelle (City), filed a complaint on September 6, 1988, alleging that mobile homes owned by defendant encroached on a portion of 13th Street in Rochelle and also on the alley between 12th and 13th Streets. Defendant filed an answer and counterclaim seeking to quiet title to the property at issue. Defendant has not appealed any aspect of the cause relating to his counterclaim.

At the bench trial, Thomas Simmons, a civil engineer, testified that he surveyed a portion of land in the City of Rochelle. His survey showed that two of the trailers in defendant's trailer park encroached onto 13th Street, and one encroached on the alley. The plat dedicating the land for 13th Street and the alley was recorded in 1875. Simmons described the area shown in the plat. A driveway runs north from Avenue B into the trailer park and curves to the east. The part of the driveway that runs north and south, about a half block in length, is on the land dedicated

for 13th Street. Running parallel to the area dedicated for 13th Street is a road "used by the city and by DelMonte [sic]" corporation. Simmons testified that this road is used "to access other parcels." Del Monte has gates on the road.

Ray Valenti, a general contractor, testified that to remove the offending trailers from the dedicated areas would require a change in the gas and sewer lines. It would cost defendant approximately $25,000 to relocate the trailers and dig new lines.

Defendant called Les Reed to testify about a proposed sale of the trailer park to Reed. Reed offered to purchase the trailer park for $192,000. The sale was contingent "upon this particular situation." When defendant attempted to question Reed about what he meant by "this particular situation," plaintiff objected, and the court sustained that objection on the grounds of relevancy. Defendant sought to elicit testimony to show the value of the trailer park if the offending trailers were removed. The court decided that such evidence was irrelevant to the issue of *laches*.

Defendant testified that he owns the trailer park on 12th Street in Rochelle. Defendant purchased the property in 1982. Prior to buying the trailer park, he visually inspected it and was told that the property ran along the fence line on the west to 12th Street on the east. Defendant did not have the property surveyed. Defendant estimated that the offending trailers were installed between 1969 and 1974 based on the model of the trailers. At the time of trial, the trailer park was full, and there were no other available gas and sewer hookups. Plaintiff notified defendant of the rights-of-way approximately 1½ years before trial.

Harold Rogers testified that he has been the building inspector for the City of Rochelle since July 1987. Prior to becoming the building inspector, Rogers had been a contractor in the Rochelle area for 34 years. Rogers believed that the trailer park had been in existence since the late 1940's or early 1950's. He estimated that the City issued permits for the installation of the plumbing for the offending trailers in 1968 or 1969. Rogers testified that, as building inspector, he provides permits for the installation of gas and sewer lines. He explained that to make "anything but ordinary repairs," the owner of property would have to get a permit from the City. Rogers gave defendant notice of the encroachments in August 1987.

Plaintiff called Larry Eykamp to testify in rebuttal. Eykamp stated that he had experience moving and disconnecting trailers. According to Eykamp, the cost of removing the offending trailers and setting them up in another trailer park would be $500. This price presumes that the hookups for the utilities are already in place.

In addition to photographs, the parties submitted into evidence a copy of the plat dated 1875 and a copy of the survey by Simmons which identified the location of the offending trailers. After hearing arguments, the court stated that it wanted to research further the applicable law before ruling. The parties subsequently submitted briefs in support of their positions. In its memorandum opinion, the court explained that under *Worley v. Ehret* (1976), 36 Ill. App. 3d 48, the party seeking to assert the defense of *laches* must have used reasonable diligence and, because defendant did not have the property surveyed before he bought it in 1982, he did not use reasonable diligence. The court accordingly found for plaintiff.

On appeal, defendant first contends that the equitable defense of adverse possession should apply to this case. However, we agree with plaintiff that adverse possession cannot be asserted against a public body. *Terwelp v. Sass* (1982), 111 Ill. App. 3d 133, 138-39.

Defendant next argues that the trial court should have barred plaintiff's relief on the basis of the equitable doctrine of *laches*. *Laches* is a doctrine which bars a plaintiff relief where, because of delay in asserting a right, the defendant has been misled or prejudiced. (*People ex rel. Nelson v. Village of Long Grove* (1988), 169 Ill. App. 3d 866, 874-75.) While a mere delay in asserting a right does not constitute *laches*, if the defendant has relied on the circumstances complained of to his detriment and the delay has been unreasonable, it would be inequitable and unjust to grant relief to the plaintiff. (*Ole, Ole, Inc. v. Kozubowski* (1989), 187 Ill. App. 3d 277, 286.) *Laches* may be asserted against the State in proper circumstances to defeat the State's fee interests. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447; see also *Wachta v. Pollution Control Board* (1972), 8 Ill. App. 3d 436, 439.) The supreme court in *Hickey*, quoting *City of Quincy v. Sturhahn* (1960), 18 Ill. 2d 604, 614, stated:

> " 'While situations may arise which justify invoking the doctrine of estoppel even against the State when acting in its governmental capacity, [citation] we have always adhered to the rule that mere nonaction of governmental officers is not sufficient to work an estoppel and that before the doctrine can be invoked against the State or a municipality there must have been *some positive acts by the officials* which may have induced the action of the adverse party under circumstances where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had previously done.' " (Emphasis added.) (*Hickey*, 35 Ill. 2d at 448.)

The defense of *laches* may also be asserted against a municipal corpora-

tion. *Village of Northbrook v. County of Cook* (1984), 126 Ill. App. 3d 145, 148.

■ The application of the equitable doctrine of *laches* is a matter of the trial court's discretion. (*Ole, Ole,* 187 Ill. App. 3d at 286.) The trial court here refused to invoke the doctrine based on *Worley* (36 Ill. App. 3d 48). In *Worley,* the subject property had been in the plaintiff's family since 1912. The plaintiff acquired title to the property in 1968. In 1969, the plaintiff learned that several buildings encroached on the property. The plaintiff had the property surveyed in 1971. The survey showed that the deeds of the adjoining landowners described land that was entirely within the plaintiff's property, yet the land they were occupying was in a different area and partially encroached on the plaintiff's property. The deed was executed in 1955. The defendant was not the original holder of the deed. The adjoining property had not been surveyed prior to defendant making improvements on the property, nor had defendant obtained an abstract of the title or title insurance. The court stated that although the plaintiff's predecessor in title could have discovered the encroachments earlier, "it is equally true that defendant and her predecessor in 'title' could similarly have discovered the invalidity of their deeds and the intrusion upon plaintiff's land prior to purchasing their deed or constructing the clubhouse." (*Worley,* 36 Ill. App. 3d at 56.) We determine that *Worley* is inapposite for two reasons.

■ First, we have been unable to discover any authority for the proposition that the party asserting *laches* must prove diligence. On the contrary, the defendant often knows of the plaintiff's right in the property. It is the plaintiff's failure to enforce the right which is the basis of the equitable doctrine of *laches.* (*Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 940.) Even if defendant had the property surveyed and discovered the encroachment, he would still be entitled to assert the doctrine of *laches.*

Second, the *Worley* case is factually distinguishable from this case. In *Worley* both parties went about their conflict without any detrimental reliance upon which *laches* could be based other than the passage of time. In this case, in addition to the passage of time, it would appear the plaintiff affirmatively acted upon the issuance of permits upon which the defendant may rely and by which the plaintiff should be bound.

■ Plaintiff responds that, if defendant was allowed to assert the defense of *laches,* the result would be "an enormous burden" on municipalities, since they continually would have to inspect and survey dedicated rights-of-way and institute proceedings immediately. We disagree.

One could reasonably conclude from the record that plaintiff issued permits for the installation of the offending trailers. Thus, plaintiff

would have explicitly allowed defendant's predecessor to place the trailers on the rights-of-way. Since plaintiff must issue building permits before any permanent structures may be erected, it can require the landowner to submit a survey to determine if a right-of-way may be in jeopardy. Lesser structures which may be erected without a building permit will not tip the equities against plaintiff to bar recovery. See *Zemple v. Butler* (1959), 17 Ill. 2d 434 (adjoining landowner denied the defense of *laches* where encroachment consisted of a driveway, shrubs and a basketball court); *Kennedy v. Town of Normal* (1934), 359 Ill. 306 (adjoining landowner denied the defense of *laches* where encroachment consisted of a birdhouse, shrubs and bushes); *Russell v. City of Lincoln* (1903), 200 Ill. 511 (adjoining landowner denied the defense of *laches* where encroachment consisted of a fence).

■ The issue is whether plaintiff's delay in asserting its right has prejudiced defendant and, if so, whether the cost of removing the encroachments is great and the corresponding benefit to plaintiff is minimal. See *Terwelp*, 111 Ill. App. 3d at 138-39. *Cf. Hawthorne Bank v. Village of Glen Ellyn* (1987), 154 Ill. App. 3d 661 (village did not "act positively" *and* did offer to compensate the opposing party for the cost of modification to avoid interference).

■ ■ The trailer park was established in the late 1940's or early 1950's. The offending trailers were installed prior to 1970, yet plaintiff did not seek to enforce its rights until 1987. Defendant presented evidence that it would cost him over $25,000 to relocate the trailers onto his property. Additionally, plaintiff has not shown any need for the alleyway. Plaintiff's need for the property, if any, is minimal because 13th Street would only be two blocks long, and there is another road which provides the same access. The relative burdens as between the parties are damages in excess of $25,000 to defendant and virtually nil to the plaintiff. Therefore, we conclude that the trial court may have erred in not barring plaintiff's relief on the basis of *laches*. Furthermore, the plaintiff's issuance of building permits would constitute an estoppel precluding plaintiff's objection to the uses subject to the permits. See *Wachta*, 8 Ill. App. 3d at 440.

Defendant further argues that plaintiff did not comply with "An Act to revise the law in relation to plats" (the Plat Act) (Ill. Rev. Stat. 1987, ch. 109, par. 2 *et seq.*) when it dedicated the street and alley. However, defendant made this argument for the first time in his reply brief. It is therefore waived. See *Ray Dancer, Inc. v. DMC Corp.* (1988), 175 Ill. App. 3d 997, 1005.

■ ■ Defendant next contends that abandonment was a proper defense to the forcible entry and detainer action. Normally, nonuse by a

municipality does not constitute an abandonment of a right-of-way. (*Lowenthal v. City of Highland Park* (1966), 70 Ill. App. 2d 236.) The exception to the above maxim arises when the nonuse is of long-standing duration and, in reliance thereon, adjacent owners have made improvements of such a lasting and valuable character as to prevent the assertion by the public body to repossess itself of the road. The extent of the pecuniary loss and sacrifice to the party making the improvement must be great. Abandonment usually requires an affirmative act on the part of the municipality. It would appear the City acted affirmatively by the issuance of building permits allowing the construction of the encroaching improvements. The trial court did not consider the merits of the defense of abandonment because it determined a lack of diligence on the part of defendant. We determine that the same reasoning we applied to the *laches* defense is applicable to the defense of abandonment. The trial court never addressed the merits of abandonment, and we see no need to preempt the trial court's responsibilities concerning a further hearing where the question of the issuance of building permits may be fully developed and findings of fact, determinations of law and the exercise of discretion, if necessary, can be adjudged.

The defendant finally contends that the trial court erred in refusing to admit testimony regarding the pending offer to purchase the defendant's trailer park.

We are hampered in our review because no offer of proof was made. Therefore, we do not know if the testimony would have been relevant to the equitable defenses of *laches* or abandonment. We therefore are unable to address the merits of this contention and, therefore, deem it waived.

The judgment of the circuit court of Ogle County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GEIGER, J., concurs.

JUSTICE INGLIS, dissenting:
I respectfully dissent from the well-motivated but potentially dangerous position adhered to by the majority. Ownership, use, control and benefit from public lands is a trust accepted by public officials. (*City of Quincy v. Sturhahn* (1960), 18 Ill. 2d 604, 615.) The courts should be cautious in approving a violation of that trust whether by error, ignorance or malevolence. The decision of the majority will allow the mobile

home park owner to reap profit from the rental of public land for an indeterminate period of time with no benefit to the public, thereby denying the public the right to use or improve the property for its intended purpose.

The majority agrees with the widely accepted rule that adverse possession cannot be asserted against a public body. (*Terwelp v. Sass* (1982), 111 Ill. App. 3d 133, 138.) Although the majority asserts that title cannot be lost to public lands by adverse possession, it ultimately finds that use of and benefit from public lands can be obtained by way of *laches* or estoppel. While it is apparently an accepted proposition of law in Illinois that *laches* (*Village of Northbrook v. County of Cook* (1984), 126 Ill. App. 3d 145, 148) and estoppel (*Wachta v. Pollution Control Board* (1972), 8 Ill. App. 3d 436, 439) may be asserted against a municipal corporation, the cases cited by the majority do not apply such equitable principles against a municipality to deprive it of title, use or benefit of public land. They are used to curb a municipality from conduct that would deprive another of use or benefit of nonpublic property.

I do not agree that the protection provided to the public in *Terwelp* should be so easily circumvented by the doctrine of *laches* or estoppel. To do so could result in public officials allowing improper profit from the public lands they are entrusted to preserve due to their own inattention to duty or, worse, by intentional failure to act promptly.

The City may have improperly issued building permits, but the mobile home park owner voluntarily improved public lands for his own financial profit. It has been held that "[t]hose who voluntarily improve public lands to which they have no right or title, acquire no right, vested or otherwise, to continue to maintain thereon that which they have erected." (*Sturhahn*, 18 Ill. 2d at 615.) Title to public lands, once acquired by a municipality, cannot be lost by mere nonaction of the public officers or impaired by the voluntary acts of others. *Sturhahn*, 18 Ill. 2d at 615.

The protection afforded to public lands was illustrated in *Trustees of Schools v. Village of Cahokia* (1934), 357 Ill. 538. In *Cahokia*, relief prayed for on the grounds of estoppel was denied to a public school that had built a school house over 60 years ago on a parcel of ground dedicated as a public square. If a school cannot impair the right of a Village after using municipality property for 60 years, then a profit-motivated business person should receive no right to use public land by the application of *laches*. I, therefore, respectfully dissent.