CANTEEN CORPORATION, Plaintiff-Appellee, v. FORMER FOODS, INC., f/k/a Tommy Lasorda Foods, Inc., Defendant-Appellant.

First District (3rd Division)   No. 1—91—0437

Opinion filed October 28, 1992.

168

Torshen, Schoenfield & Spreyer, Ltd. (Jerome H. Torshen, Mark K. Schoenfield, and James K. Genden, of counsel), and Sugar, Friedberg &

Felsenthal (Richard A. Sugar and Andrew B. David, of counsel), both of Chicago, for appellant.

Sidley & Austin, of Chicago (James A. Hardgrove and John M. Breen, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Former Foods, Inc., previously known as Tommy Lasorda Foods, Inc. (TLF), sought damages in an arbitration proceeding from plaintiff, Canteen Corporation (Canteen), for plaintiff's alleged breach of contract. The arbitration panel awarded defendant a $524,553.12 judgment and granted plaintiff a $16,151 setoff. On July 19, 1990, plaintiff filed an action in the circuit court to vacate the arbitration award pursuant to sections 12 and 15 of the Uniform Arbitration Act and the common law. (Ill. Rev. Stat. 1989, ch. 10, pars. 112, 115.) Defendant subsequently moved to confirm the award pursuant to section 11 of the Uniform Arbitration Act. (Ill. Rev. Stat. 1989, ch. 10, par. 111.) On January 18, 1991, the trial court granted plaintiff's motion to vacate the award. Defendant now appeals. We reverse and grant defendant's motion to confirm the arbitration award.

The following issues are before this court for review: (1) whether the arbitration panel's refusal to hear evidence of defendant's actions subsequent to November 30, 1987, violated section 12(a)(4) of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(4)); (2) whether the trial court applied the correct standard of review for an arbitration award pursuant to section 12(a)(3) of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(3)); (3) whether the trial court erred in vacating defendant's arbitration award where an arbitration panel found that plaintiff breached a requirements contract with defendant by terminating its requirements purchase of popcorn from defendant, without giving defendant 30 days to cure, and where the panel then held that plaintiff's termination of the contract was proper; (4) whether the trial court erred when it held that the arbitration panel exceeded its authority and committed a gross error of law by disregarding the 30-day written notice and opportunity to cure provision; (5) whether the trial court erred in ruling that the arbitrators committed a gross error of law when they disregarded the language of the contract by ignoring plaintiff's timely reinstatement of requirements purchasing and defendant's actions which rendered its own performance impossible prior to the expiration of

any cure period; and (6) whether the arbitration panel committed gross error by awarding damages to defendant which included expenses which defendant did not incur, and expenses which defendant saved by mitigating its damages.

On August 22, 1986, TLF and Canteen entered into a requirements contract whereby TLF was to be the exclusive supplier of microwaveable popcorn to be sold in vending machines owned or serviced by Canteen. In section 4 of the contract, TLF warranted that "Lasorda's microwave popcorn shall be of the same or better quality than that currently sold by Canteen and meet industry quality standards." Section 4 also provided that "[i]f Lasorda fails to provide a satisfactory product which meets Canteen's standards in quality and is competitively priced, Canteen may terminate this agreement in accordance with Section 12." Section 12 of the agreement provides as follows:

> "12. Termination for Cause and Right to Cure. Each party hereto reserves the right, in case the other party fails to carry out any conditions of this Agreement, to cancel the Agreement after due demand in writing addressed to the other party. If at the end of thirty (30) days from the date of the receipt of such demand, the other party has not complied with the demand, the Agreement shall immediately end, without necessity of any other steps being taken."

Section 16 of the contract provided that the contract "is to be \*\*\* governed and construed according to the laws of the State of Illinois." Section 19 of the agreement provided that "[a]ny controversy or claim arising out of or related to this Agreement, or breach thereof, shall be settled by binding arbitration in Illinois."

TLF and Canteen tested the popcorn before it was made available for sale to the public. Canteen began delivering the popcorn to its vending machines during the summer of 1987. Soon thereafter, Canteen learned from several of its customers that the popcorn supplied by TLF was defective. Canteen then informed TLF that it had received complaints from its clients concerning the quality of the popcorn. TLF maintained that any problems were not caused by the poor quality of its product, but by Canteen's failure to recalibrate the microwave ovens adjacent to its vending machines so that the ovens would heat the popcorn at an optimal temperature. Dan Krypan, a vice-president of Canteen, responded to TLF by writing the following letter dated October 12, 1987, to Angelo Demetriou, president of TLF:

"Dear Angelo:

We are finding it increasingly difficult to maintain and support the exclusive use of Lasorda popcorn in Canteen's vending operations.

The same complaints we've reviewed many times over the last six weeks continue to come in by phone and mail; leaking packaging, burned bags and product, unpopped kernels and general dissatisfaction.

Many clients have demanded that Lasorda popcorn be removed and the original competitive brand brought back. In every case, this followed complaints by client employees at the affected location. While we were able to delay or diffuse this situation in some cases, there is an undercurrent of resentment there that can erupt at any moment.

Specifically to the point, we find that our sales have declined from 20% to 40% where we carry Lasorda as the only popcorn. That figure truly understates the actual effect, since we have put Lasorda into our glassfront machines, where our tests show we would normally get a 26% lift.

In summary, while we wish to continue the program, client demands for removal and field operations reports of substantial sales losses, compels a re-evaluation of our position and requires that we no longer provide Lasorda exclusivity."

Canteen later recalibrated the microwave ovens adjacent to its vending machines. On October 12, 1987, Canteen unilaterally ceased to purchase popcorn from TLF.

TLF then telephoned Canteen to object to the termination of Canteen's requirements purchasing. On October 16, 1987, Krypan wrote to James Atsaves, the chief executive officer of TLF. Krypan's letter reiterated previous allegations that the popcorn supplied by TLF was poor in quality.

Later that month, Atsaves wrote to Krypan on behalf of TLF in response to Canteen's letters dated October 12, 1987, and October 16, 1987. In Atsaves' letter dated October 26, 1987, he reiterated his objection to Canteen's termination of requirements purchasing. Atsaves reminded Krypan that the contract provided that "Canteen was to buy Lasorda popcorn exclusively."

Several days later, Atsaves wrote to Krypan again. The following letter written by Atsaves was dated November 3, 1987:

"Dear Dan:

This letter is to inform you that [TLF] currently stands ready to continue to fulfill our exclusive contract with your company

for microwave popcorn. It is our position that all of the problems which we are aware of and have control over (and are not your company's responsibility) detailed in your [letters dated] October 12th and October 14th have now been resolved. Therefore unless we are formally notified to the contrary, we stand ready to fulfill our part of the exclusive contract and in turn expect Canteen to support its end of the contract by retracting any information (verbal or written) which could be interpreted as rescinding [TLF's] exclusive contract.

In my letter to you dated October 26, 1987, I detailed all of your complaints and our response to them. It is our opinion that all of these complaints which you have permitted us to respond to have been answered and resolved. Based upon our telephone conversation on October 26, 1987, we did not view your letter to Angelo J. Demetriou—dated October 12 or your letter to me—dated October 14th as an official cancellation notice per Section 12 of our contract, because there was no reference to the contract, it was somewhat ambiguous and you told me these letters were to remain in Corporate and not be given to anyone outside of Chicago. Despite your assertion it has now come to my attention from various sources that Canteen has issued either a verbal or written cancellation of our exclusive contract with your company. We feel this is a direct violation of Section 12 of our contract which provides both parties with a period of 30 days to cure any violation of the contract prior to cancellation.

While we wish to avoid any legal avenues open to us, I must remind you that our 5 year contract with your company is the centerpiece of the business plan of our company. It was and remains, the major support for the success or failure of this company."

Canteen responded to Atsaves' letter by refusing to reinstate exclusive requirements purchasing of popcorn from TLF. Canteen, however, continued to purchase popcorn from TLF on a nonexclusive basis.

Upon hearing of Canteen's refusal to reinstate requirements purchasing, TLF notified its shareholders and Tommy Lasorda Advance Packaging Company (Advance Packaging), TLF's packer, that Canteen refused to purchase its requirements from TLF. Subsequently, TLF's shareholders refused to provide additional funds to the company. In addition, Advance Packaging increased its price for services rendered to TLF and adopted more restrictive credit terms for the company.

On November 9, 1987, Canteen offered to introduce TLF popcorn to the field as a "preferred" product. Under this plan, Canteen would "aggressively support" the product while TLF worked to upgrade the quality of its popcorn with the ultimate goal of TLF becoming Canteen's exclusive supplier again. On November 13, 1987, Atsaves rejected this proposal and instead demanded that Canteen pay TLF damages or purchase the company. On November 23, 1987, TLF cancelled its license agreement with Thomas Lasorda because the company was unable to pay the celebrity.

On November 25, 1987, Ken Davidson, Canteen's purchasing director, informed Atsaves that Canteen would resume purchasing its requirements from TLF. This conversation was documented in a contemporaneous memorandum drafted by Davidson. Immediately following notice to TLF on November 25, Les Lenzner, Canteen's vending operations director, instructed all of Canteen's field operators that TLF was to be "our exclusive popcorn."

On November 30, 1987, TLF cancelled its outstanding orders for raw materials. In December of 1987, TLF ceased operations. TLF then invoked the arbitration clause in the contract in an effort to obtain $1,669,815.87 for damages it suffered as a result of Canteen's refusal to perform pursuant to the requirements contract. TLF alleged that Canteen breached section 12 of the agreement by terminating its requirements purchasing without giving TLF 30 days to cure. TLF maintained that the breach occurred when Canteen unilaterally declared that it would no longer abide by the exclusivity provision. The dispute was heard by a panel of three arbitrators. The first portion of the hearing addressed the issue of liability while the second phase of the hearing focused exclusively upon the issue of damages.

During the arbitration hearing, Atsaves testified that Canteen refused to resume requirements purchasing. TLF maintained that Canteen's failure to restore exclusivity was demonstrated by its business records. TLF further alleged that Canteen's own witnesses agreed that TLF's continuing demands for exclusivity would not have made sense if Canteen had already agreed to resume requirements purchasing. One of the arbitrators noted that the evidence of Canteen's purchases from TLF did not reflect an increase which should have followed a reinstatement of requirements purchasing.

In addition, TLF alleged that Canteen officials admitted to TLF that its field personnel were hostile to mandates that they use an exclusive supplier. TLF asserted that Canteen refused to purchase popcorn exclusively from TLF due to its own field personnel's resistance to mandates for exclusive purchasing. In addition, Atsaves testified

that he was told by Canteen that "no matter what happened, [Canteen] wasn't going to turn around and re-mandate it *** even though Canteen felt the product had been corrected."

Four witnesses testified on behalf of Canteen concerning the popcorn's defects. Canteen also maintained that TLF"s own documents confirmed that its product was defective. These documents include data from tests conducted by TLF in September of 1987. Canteen alleged that the documents revealed that a substantial percentage of the bags of popcorn charred when tested in a microwave oven, including those bags which were heated in the optimal manner recommended by TLF.

Finally, Canteen alleged that in November of 1987, it offered to replace the requirements contract with a minimum purchase arrangement, it then reinstated exclusivity with TLF and it offered to assist TLF by purchasing the company's inventory after TLF ceased to operate, but that TLF refused these offers. In addition, Canteen maintained that there was no "field resistance" to TLF popcorn or any other products purchased by Canteen exclusively.

The arbitrators refused to permit oral testimony by witnesses for Canteen concerning any events which occurred after November 30, 1987, on the grounds that such evidence was derived from settlement negotiations between Canteen and TLF. This ruling prevented Canteen from presenting testimony to support its allegation that TLF failed to respond to Canteen's offer to replace the contract with a minimum purchase arrangement, and Canteen's reinstatement of exclusivity. Canteen offered into evidence certain handwritten notes taken during discussions concerning these matters without objection by TLF or the panel. The arbitrators, however, precluded any testimony concerning the notes.

During the portion of the hearing concerning damages, the arbitrators solicited legal briefs from the parties on the issue. TLF argued that its damages amounted to $1,669,813, while Canteen attempted to show that defendant suffered no damage. Both parties submitted briefs and reply briefs. In addition, each party retained an expert who prepared a written report analyzing the proper measure of damages. These reports were submitted into evidence in lieu of direct testimony from the experts. Each expert was cross-examined by opposing counsel. Furthermore, plaintiff's records of its purchases from 1987 through 1989 were introduced into evidence. George Bunda, plaintiff's senior purchasing clerk for vended products, testified to the accuracy and derivation of the sales volume figures, and the appropriate sales price per unit for calculating damages. Atsaves

then testified as to TLF"s per-unit prices and costs as well as its overhead.

At the end of the hearing, the arbitrators expressly found that TLF tendered nonconforming goods to Canteen. During the course of the hearing, however, the panel noted that there was clear evidence that Canteen terminated exclusive purchasing rather than merely suspending performance. In addition, the arbitrators noted that Canteen failed to utilize alternative remedies such as seeking cover for the defective product, or rejecting nonconforming popcorn. The panel awarded TLF a $524,553.12 judgment for lost profits less $16,151 owed to Canteen in unpaid rebates. The arbitrators did not explain the manner in which they calculated defendant's award.

On July 19, 1990, Canteen filed a petition to vacate the arbitration award in the circuit court of Cook County pursuant to sections 12 and 15 of the Uniform Arbitration Act. (Ill. Rev. Stat. 1989, ch. 10, pars. 112, 115.) Prior to ruling on this cause, the trial court articulated the standard of review for an arbitration award as established in *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 389 N.E.2d 1181.

The trial court ruled that the arbitrators "exceeded their authority and committed gross error in finding [Canteen] in breach of the contract." In making this ruling, the court relied upon the arbitrators' determination that "Canteen had grounds to terminate the contract for nonconforming goods." The trial court held that Canteen had a clear legal right to suspend its performance and await adequate assurances of conforming future performance from TLF, and that Canteen had "suspended performance" and demanded adequate assurances pursuant to section 2—609 of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1989, ch. 26, par. 2—609).

In addition, the court found that the arbitrators committed a gross error by interpreting the contract as "either exclusive or * * * terminated," thereby limiting Canteen's remedies for the tender of nonconforming goods to termination of the contract. The trial court further reasoned that by limiting Canteen in this manner, the arbitrators "manifestly disregarded" the language of sections 4 and 12 of the contract and ignored applicable law governing the contractual limitation of remedies.

The trial court also found that "[t]ermination under Section 12 of the agreement with its 30-day cure period was not [Canteen's] sole remedy for the tender of nonconforming popcorn," on the basis that section 2—719 of the Code required an express statement that a remedy is the sole remedy available. Ill. Rev. Stat. 1989, ch. 26, par. 2—719.

The trial court further ruled that "even assuming that Canteen did breach the agreement by suspending exclusivity," the 30-day period for cure never commenced because TLF did not demand cure or send Canteen the contractually required written notice of termination. The trial court concluded that the arbitrators therefore exceeded their authority by "disregarding the 30-day written notice provision for termination of the agreement." Furthermore, the trial court held that the arbitrators committed a gross error when they disregarded the termination clause by failing to acknowledge that "Canteen reinstated exclusivity prior to 30 days after the receipt of the first letter."

The trial court also concluded that TLF rendered its own performance under the contract impossible by terminating its licensing agreement with Tommy Lasorda on November 23, 1987, "before any cure period could have expired."

Finally, the trial court held that the arbitrators exceeded their authority and committed a gross error of law "by not applying the [Code] as required by Section 16 of the contract," because said section provides that the contract "is to be signed, governed and construed according to the laws of the State of Illinois." See Ill. Rev. Stat. 1989, ch. 26, par. 1—101 *et seq.*

On January 18, 1991, the trial court entered an order granting Canteen's motion to vacate the arbitration award. Because of the above ruling, the court did not address the issue of whether the arbitrators calculated TLF's damages correctly. This appeal followed.

First, plaintiff contends that the arbitrators' refusal to hear material evidence concerning events which occurred in December of 1987 violated section 12(a)(4) of the Uniform Arbitration Act. (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(4).) Specifically, plaintiff claims that it was prejudiced because the arbitrators refused to consider evidence of information elicited during settlement negotiations between the parties, including defendant's business plans and financial statements. Defendant maintains that the panel's exclusion of the evidence did not constitute a gross error of law.

Section 12(a)(4) of the Uniform Arbitration Act provides as follows:

> "§12. Vacating an award. (a) Upon application of a party, the court shall vacate an award where:
>
> * * *
>
> (4) The arbitrators *** refused to hear evidence material to the controversy *** as to prejudice substantially the rights of a party[.]" Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(4).

Upon judicial review of an arbitration order, an appellate court must presume that the arbitrators did not exceed their powers. (*Burd, Inc. v Stoneville Furniture Co.* (1985), 134 Ill. App. 3d 149, 154, 479 N.E.2d 962, 965.) Allegations that an arbitrator refused to hear material evidence need not be addressed by a court of review where the record fails to show that the arbitrators excluded any material evidence offered by the parties. *Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 390, 574 N.E.2d 636, 643.

■ In the present case, plaintiff has failed to meet its burden of rebutting the presumption that the arbitrators acted within their powers because the record shows that the evidence which the arbitrators declined to consider was immaterial to the resolution of the dispute before them. The questions presented to the arbitration panel were whether Canteen breached its contract with TLF, and whether TLF could obtain damages from Canteen as a result of Canteen's breach. Plaintiff sought to submit defendant's financial statements and evidence of defendant's business plans to the panel. The arbitrators, who were in the best position to make determinations with regard to the materiality of the evidence, ruled that the evidence in question was irrelevant. We agree. The information in question was generated by defendant and obtained by plaintiff during the month of December 1987. The record shows that plaintiff breached the contract on October 12, 1987, by terminating its exclusive requirements purchasing of popcorn from defendant. The evidence which plaintiff attempted to submit to the arbitrators was generated over one month *after* plaintiff's alleged breach, and several weeks *after* a cure period would have ended had plaintiff invoked the remedy provided in section 12 of the contract on the date of its breach. The arbitration panel's refusal to hear the evidence submitted by plaintiff, therefore, did not substantially prejudice plaintiff's rights. Accordingly, we rule that the arbitrators did not violate section 12(a)(4) of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(4)) by refusing to hear the evidence in question.

Next, defendant contends that the trial court erred by applying the wrong standard of review to the arbitration order and by substituting its own evaluation of the facts and its own interpretation of the contract between the parties. Plaintiff maintains that the trial court applied the proper standard of review for an arbitration award and that it correctly determined that the arbitrators exceeded their authority and committed numerous errors of law.

It is well settled in Illinois that petitions to vacate arbitration awards will be granted only in extraordinary circumstances. Judicial

review of an arbitrator's award is more limited in scope than an appellate court's review of a trial court's decision. (*Bernhardt v. Polygraphic Co. of America* (1986), 350 U.S. 198, 203, 100 L. Ed. 199, 205, 76 S. Ct. 273, 276; *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 7-8, 389 N.E.2d 1181, 1183.) "[J]udges[ ] have no power to reach and determine the merits of an arbitration award merely because of strong disagreement with the arbitrator's interpretation of the contract." (*Hollister, Inc. v. Abbott Laboratories* (1988), 170 Ill. App. 3d 1051, 1062, 524 N.E.2d 1035, 1042.) Section 12(a)(3) of the Uniform Arbitration Act provides as follows:

"§12. Vacating an award. (a) Upon application of a party, the court shall vacate an award where:

* * *

(3) The arbitrators exceeded their powers[.]" Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(3).

The Illinois Supreme Court articulated the appropriate standard of review for an appeal of an arbitration award pursuant to section 12(a)(3) of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(3)) in *Garver* (76 Ill. 2d at 9-10, 389 N.E.2d at 1184). The *Garver* court stated:

"[T]he question for the court is whether the construction of the contract made by the arbitrator is a reasonably possible one that can seriously be made in the context in which the contract was made. Stated affirmatively, if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award."

The *Garver* court reasoned that "[a] long line of cases has established that an arbitrator's award will not be set aside because of his errors in judgment or mistakes of law or fact." (*Garver*, 76 Ill. 2d at 7, 389 N.E.2d at 1183. See also *Burchell v. Marsh* (1854), 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99; *Kalish v. Illinois Education Association* (1988), 166 Ill. App. 3d 406, 409, 519 N.E.2d 1031, 1032.) The *Garver* court emphasized that "[w]henever possible a court must construe an award so as to uphold its validity." *Garver*, 76 Ill. 2d at 10, 389 N.E.2d at 1184.

In keeping with the *Garver* decision, this court has held that there is a presumption that the arbitrators below did not exceed their powers. (*Burd*, 134 Ill. App. 3d at 154, 479 N.E.2d at 965.) We have also ruled that the party challenging an arbitration award bears the burden of establishing that the award was improper by "clear, strong

and convincing evidence." *Hollister*, 170 Ill. App. 3d at 1062, 524 N.E.2d at 1042; *Burd*, 134 Ill. App. 3d at 154, 479 N.E.2d at 965.

■■ Although the trial court cited *Garver* before rendering its decision, the court committed reversible error because it disregarded the strict standard of review for arbitration awards mandated in *Garver*. In the present case, the arbitrators had the opportunity to hear the testimony of the witnesses, to assess their credibility, and to consider over 100 exhibits. The arbitrators found that defendant tendered nonconforming goods to plaintiff, but that plaintiff terminated its exclusive purchasing from defendant instead of suspending its performance and giving defendant an opportunity to cure. The panel also found that plaintiff failed to utilize alternative remedies available in the Code. Ill. Rev. Stat. 1989, ch. 26, par. 1—101 *et seq.*

There was ample evidence in the record to support the arbitrators' conclusions. The letter written by Krypan dated October 12, 1987, was evidence that plaintiff terminated exclusive requirements purchasing from defendant. Furthermore, on November 9, 1987, plaintiff conceded that it offered to reintroduce defendant's popcorn into the market as a "preferred" product with the ultimate goal of defendant becoming plaintiff's exclusive supplier again. Finally, witnesses for defendant testified during the arbitration hearing that plaintiff refused to reinstate exclusivity. The above evidence combined justifies the arbitrators' award.

The trial court invaded the province of the arbitrators. The trial court substituted its own construction of the contract and interpretation of the facts for the finding made by the arbitration panel. The trial court held that the arbitrators exceeded their authority and committed a gross error of law when they found that plaintiff breached the contract. The trial court also ruled that plaintiff had in fact suspended the contract and demanded adequate assurances. In addition, the trial court found that the panel committed a gross error when it manifestly disregarded sections 4 and 12 of the contract, and when it ignored law governing the contractual limitation of remedies. The trial court ruled that plaintiff had reinstated exclusivity, but that defendant rendered its own performance impossible by terminating its licensing agreement with Thomas Lasorda. On the basis of the aforementioned findings, the trial court vacated the arbitrators' award.

Although the trial court disagreed with the panel's conclusions, the trial court erred in vacating defendant's arbitration award because all fair and reasonable minds would not agree that the panel's construction of the contract was *impossible* under a fair interpretation of the contract. Plaintiff has failed to establish that the trial

court correctly ruled that the arbitrators exceeded their authority and committed numerous errors of law, or that the panel's award was improper. Plaintiff, therefore, has failed to overcome the presumption in favor of the validity of the arbitrators' decision. Accordingly, we rule that the trial court erred by failing to apply the proper standard of review and by substituting its own evaluation of the facts and its own interpretation of the contract between the parties.

Next, defendant alleges that the trial court erred in vacating its award since it was reasonable for the panel to conclude that plaintiff breached the contract by terminating exclusivity without giving defendant 30 days to cure. Defendant maintains that the abrogation of exclusivity terminated the contract for the following reasons: (1) exclusivity is an essential term of a requirements contract and the arbitrators acknowledged that exclusivity was the essence of the agreement; (2) evidence presented to the panel which showed that the 30-day cure provision was not plaintiff's sole remedy prohibited plaintiff from unilaterally terminating exclusive purchasing; (3) plaintiff's withdrawal of exclusivity breached the contract; (4) the trial court erred in assuming that plaintiff could or even attempted to invoke section 2—609 of the Code (Ill. Rev. Stat. 1989, ch. 26, par. 2—609); and (5) there was evidence that plaintiff did not cure its breach.

Plaintiff, however, maintains that the trial court correctly ruled that the arbitrators committed a gross error of law and disregarded the contract because the panel, after finding that plaintiff breached the contract, held that plaintiff could terminate the agreement but could not suspend its performance. In support of its argument, plaintiff alleges that the panel found that defendant tendered nonconforming goods in breach of the quality standards expressly warranted in the contract, and because the arbitrators disregarded the language of the agreement and Illinois law when they limited plaintiff's available remedies with respect to nonconforming goods.

■■ We agree with defendant. We find that the trial court erred when it vacated defendant's award, because the arbitrators properly concluded that plaintiff breached the contract when it terminated its requirements purchasing from defendant in violation of section 12 of the agreement.

The essence of a requirements contract is the buyer's obligation to obtain its requirements for specified goods by purchasing the goods exclusively from the seller. The quantity of goods that a buyer agrees to purchase is an essential term of a sales contract. (Ill. Rev. Stat. 1989, ch. 26, par. 2—201(1).) If the buyer's quantitative obligation cannot be measured, the contract is not enforceable. (Ill. Rev. Stat. 1989,

ch. 26, par. 2—201(1); *Ray Dancer, Inc. v. D M C Corp.* (1988), 175 Ill. App. 3d 997, 1004, 530 N.E.2d 605, 610.) In a requirements contract, the buyer's obligation to purchase is not measured by a specified quantity of goods, but by the agreement to purchase said goods *exclusively* from the seller. (Ill. Rev. Stat. 1989, ch. 26, par. 2—306.) A requirements contract which does not obligate the buyer to obtain all of its requirements from the seller is illusory. (*Ray Dancer*, 175 Ill. App. 3d at 1004, 530 N.E.2d at 610. See also J. Calamari & J. Perillo, Contracts §4—19, at 166 (2d ed. 1977); 1A A. Corbin, Contracts §157, at 40 (2d ed. 1963); 1 S. Williston, Contracts §§104A, 105A, at 402, 420 (3d ed. 1957).) On October 12, 1987, plaintiff declared that it would not honor the exclusivity provision of the contract. When plaintiff stopped purchasing popcorn exclusively from defendant, it terminated the requirements contract. Without exclusivity there was no quantity term left in the contract. Since the contract had no other quantity term, plaintiff's termination of exclusivity constituted a breach of the contract. Regardless of whether defendant tendered nonconforming popcorn, plaintiff was not entitled to terminate exclusivity without giving defendant written notice and 30 days to cure.

■ The trial court ruled that plaintiff "chose to suspend performance and demand adequate assurances, in compliance with section 2—609 of the Code, due to the reasonable grounds for insecurity." Upon viewing the evidence in the present case in the context of the ruling in *Garver*, we find that the trial court's finding was erroneous. The arbitrators expressly found that plaintiff's actions in October of 1987 constituted a breach of contract. The record supports this conclusion. Section 12 of the contract substituted the requirement of a 30-day cure period for the Code provision that would have allowed plaintiff to suspend performance and await adequate assurances. Furthermore, plaintiff never invoked section 2—609. (Ill. Rev. Stat. 1989, ch. 26, par. 2—609.) The Code permits the parties to a contract to substitute their own remedies for the remedies specified in the Code. Specifically, section 2—719(1)(a) of the Code provides:

"§2—719. Contractual Modification or Limitation of Remedy. (1) Subject to the provisions of subsections (2) and (3) of this Section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article ***." Ill. Rev. Stat. 1989, ch. 26, par. 2—719(1)(a).

The parties substituted their own remedy whereby plaintiff could be released from its obligation to purchase popcorn exclusively from

defendant. The parties bargained for a method of terminating' the contract which was contrary to the procedure prescribed by section 2—609 of the Code. (Ill. Rev. Stat. 1989, ch. 26, par. 2—609.) The termination provision chosen by the parties only allowed plaintiff to cease its performance after written notice to defendant and a cure period. The contract prohibited plaintiff from immediately ceasing to perform. In sum, the contract, while preserving other Code remedies, substituted the notice and 30-day cure provision of section 12 for section 2—609 of the Code. (Ill. Rev. Stat. 1989, ch. 26, par. 2—609.) The trial court's ruling was also erroneous because the record does not substantiate the trial court's finding that plaintiff attempted to invoke the remedy provided in section 2—609 of the Code. Plaintiff's letter dated October 12, 1987, in which it terminated exclusivity, does not mention section 2—609 of the Code or demand assurances. (Ill. Rev. Stat. 1989, ch. 26, par. 2—609.) The trial court, therefore, committed reversible error when it substituted its conclusions for those of the arbitrators and ruled that plaintiff's letter dated October 12, 1987, constituted an exercise of a remedy available under section 2—609 of the Code. Ill. Rev. Stat. 1989, ch. 26, par. 2—609.

■ In addition, we find that plaintiff never cured its breach. The testimony of Atsaves, coupled with plaintiff's letter dated October 16, 1987, and evidence of other communications between plaintiff and defendant, was sufficient justification for rejecting plaintiff's position.

The construction of the contract made by the arbitrators was reasonable. All fair and reasonable minds would *not* agree that the arbitrators' construction of the contract was impossible under a fair interpretation of the agreement. The trial court substituted its own construction of the contract and interpretation of the facts for the finding made by the arbitration panel. Plaintiff has failed to demonstrate that the trial court overcame the presumption in favor of the arbitrators' decision. Accordingly, we hold that the trial court erred in vacating defendant's award on the basis that the arbitrators committed gross errors of law.

Defendant next contends that the trial court erred in finding that the arbitrators exceeded their authority because the record supports the panel's conclusion that it complied with section 12 of the contract when it demanded in writing that plaintiff restore exclusive requirements purchasing. Plaintiff maintains that the trial court correctly ruled that the arbitration panel exceeded its authority and committed a gross error of law by disregarding the 30-day written notice and opportunity to cure provision in section 12 of the contract.

■ We hold that the trial court erred when it overturned the arbitration panel's finding. The record amply supports the arbitrators' conclusion that defendant, in compliance with the contract, demanded in writing that plaintiff restore exclusivity and cease breaching the contract. The trial court erred when it ruled that "[e]ven assuming that Canteen did breach the agreement by suspending exclusivity, the 30-day time period never began to run, as no demand or written notice of termination was received from defendant." Defendant notified plaintiff in writing on two separate occasions that it had no right to terminate its requirements purchasing of popcorn. Written notice came in a letter dated October 26, 1987. This letter clearly stated that plaintiff had no grounds to justify terminating exclusivity from defendant. The letter demanded that plaintiff restore exclusivity. This letter alone constitutes written notice and a demand to cure. The second letter written by defendant was dated November 3, 1987. In this letter, defendant insisted that plaintiff cure its breach of its obligation to buy popcorn exclusively from it. The letter stated that plaintiff was in "direct violation of [the] contract which provides both parties with a period of 30 days to cure any violation of the contract prior to cancellation."

It is ironic that plaintiff, which abrogated its contractual obligation to purchase its requirements from defendant, without any notice or cure period, argued before the trial court that it could not be held liable for its breach because defendant allegedly did not give the 30-day notice required by section 12 of the contract. Moreover, plaintiff's argument is incorrect. The record shows that the arbitration panel had a sufficient basis for concluding that defendant satisfied the requirements enunciated in section 12 of the agreement.

Plaintiff has failed to demonstrate by clear and convincing evidence that the arbitration panel's ruling was improper. The panel's construction of the contract was reasonable, and all reasonable minds would not agree that the arbitrators' construction of the contract was impossible. Given the standard of review which the trial court was required to apply, the panel's conclusion should not have been overturned.

Next, defendant alleges that the trial court erred in vacating its award because the trial court relied upon its beliefs that plaintiff restored exclusivity and that defendant terminated its relationship with Thomas Lasorda before any cure period could have ended as the basis for vacating the arbitrators' award. Plaintiff maintains that the trial court correctly ruled that the arbitrators committed gross error and disregarded the language of the agreement by ignoring its timely

cure, and defendant's behavior which rendered defendant's own performance impossible before the expiration of any cure period.

■ The trial court asserted that "Canteen reinstated exclusivity prior to the 30 days after the receipt of the first letter." The trial court found that the arbitrators committed a gross error in determining that Canteen breached the contract based upon this conclusion. The trial court's determination is contrary to the record. As we noted above, plaintiff never resumed its exclusive purchasing from defendant. Another reason given by the trial court for vacating the arbitrators' award was its belief that defendant's "own performance was impossible before any cure period could have expired," as Thomas Lasorda terminated the agreement on November 23, 1987. The record shows that defendant did not sign a termination agreement with Lasorda on November 23, 1987. While it received a draft of a termination agreement on that date, it delayed executing the document until December of 1987 in the hope that a restoration of exclusivity would make this unnecessary.

"[J]udges[ ] have no power to reach and determine the merits of an arbitration award merely because of strong disagreement with the arbitrators' interpretation of the contract." (*Hollister*, 170 Ill. App. 3d at 1062, 524 N.E.2d at 1042.) Again, the trial court erroneously substituted its own interpretation of the facts for the reasonable conclusions of the arbitrators. In so doing, the trial court violated *Garver* and committed reversible error.

Finally, plaintiff contends that the arbitrators committed gross error by awarding damages which included overhead expenses which defendant did not incur and which it saved through mitigation. Defendant maintains that the arbitration panel's award should be confirmed because the arbitrators applied the correct standard of damages and there was sufficient evidence to support the order.

■ We agree with defendant. The reasons discussed above which require the reversal of the portion of the order vacating the award also require reversal of the the trial court's denial of defendant's motion to confirm. The arbitrators concluded that plaintiff owed defendant gross damages of $524,533.12, less $16,151 in unpaid rebates. The arbitrators did not explain their award. "It is well settled that arbitrators need not provide explanations or rationale to show how their conclusions were reached." (*Braun/Skiba, Ltd. v. Orchard Partnership* (1988), 177 Ill. App. 3d 331, 335, 532 N.E.2d 405, 407.) Subsequently, the trial court denied defendant's motion for an order confirming the arbitration award pursuant to section 11 of the Uniform Arbitration Act. Ill. Rev. Stat. 1989, ch. 10, par. 111.

Section 11 of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 111) states that the court "shall confirm an award" unless the party opposing the award establishes one of the limited grounds for vacating the award specified in section 12(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)). Section 12(a) of the Uniform Arbitration Act makes the following relevant provision:

"§12. Vacating an award. (a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party." (Ill. Rev. Stat. 1989, ch. 10, par. 112(a).)

Plaintiff has failed to establish one of the aforementioned grounds as justification for vacating defendant's award.

In addition, the record in the arbitration proceeding, the parties' briefs on the issue of damages, the testimony of witnesses, and the reports submitted by expert witnesses gave evidence sufficient to substantiate the arbitrators' award. We may infer that the arbitrators considered the volume of defendant's sales and/or the profit per each unit of popcorn sold in order to determine the amount of the damage award. It is also likely that the arbitrators attempted to distinguish between appropriate overhead and fixed cost factors and those costs which were not appropriate in their final award. Defendant claimed lost profits of almost $1.7 million. The final award of the arbitrators amounted to less than one-third of this figure. The precision of the arbitrators' monetary award, exemplified by their calculation of the rebates due plaintiff, indicates that the arbitrators carefully weighed the evidence and considered the applicable law.

It cannot be said that no reasonable and fair mind would agree with the arbitrators' award. The trial court, therefore, committed reversible error when it failed to confirm the award in accordance with *Garver* and section 11 of the Uniform Arbitration Act. (Ill. Rev. Stat. 1989, ch. 10, par. 111.) Accordingly, the arbitrators' award to defendant should not be disturbed.

For the aforementioned reasons, we reverse the trial court's order of January 18, 1991, and grant defendant's motion to confirm the arbitration award.

Reversed.

GREIMAN, P.J., and CERDA, J., concur.